ALFREDO ABRÉU ROMÁN ET AL., Plaintiffs, Appellants, and Appellees, *v.* LUIS RIVERA SANTOS and MANUEL PIÑERO DÍAZ, Defendants, Appellees, and Appellants.

Nos. R-62-194, R-62-196.          Decided May 6, 1965.

S. L. *Lagarde Garcés* for plaintiffs. *J. B. Fernández Badillo, Solicitor General,* and *Jorge Segarra Olivero, Assistant Solicitor General,* for defendants.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

PER CURIAM: Plaintiffs, all of them coffee growers of the zone of Adjuntas, filed a complaint on June 5, 1959 in the Superior Court, San Juan Part, against Luis Rivera Santos, Secretary of Agriculture, and Manuel Piñero Díaz, Director of the Coffee Insurance of Puerto Rico, alleging that they all had their crops and some of them their plantations insured with the Coffee Insurance and claiming the corresponding compensation for the damages allegedly suffered on said crops and plantations as a result of the "hurricane gales" which swept the island during September 13 and 14, 1958. Defendants answered admitting that plaintiffs were insured with the Coffee Insurance. They denied the occurrence of the "hurricane gales" or that the former suffered damages to their crops and plantations. They alleged as special defense lack of jurisdiction of the court inasmuch as pursuant to the provisions of the Act and the Rules and Regulations of the Coffee Insurance, and the terms and conditions of the policies issued in favor of plaintiffs, it is required to submit to arbitration the differences arising from the amount of losses, an indispensable and mandatory requirement which "precludes any judicial action so long as the controversy is not decided by arbitration."

The lower court heard the case on the merits. In the judgment rendered it dismissed the special defense of the defendants upon concluding that, as a matter of law, the disclaim of liability on the part of the defendants and the inefficacy of the arbitration due to the delay and irregularity of the proceedings did not preclude plaintiffs from resorting to the courts to claim their rights. The court also concluded that as a matter of fact the zone where plaintiffs' farms are located was swept by hurricane gales during September 13 and 14, 1958 causing losses to their crops, but not in the plantations, and ordered defendants to pay plaintiffs for their losses and attorney's fees.

Both parties appealed to this Court from the judgment thus rendered. Plaintiffs[1] assigned as error the refusal of the lower court to acknowledge the damages to the plantations, and the defendant, the dismissal of the special defense and the award of attorney's fees. The petitions for review were consolidated.

The Coffee Insurance Act[2] provides in its relevant part:

"The Secretary of Agriculture and Commerce may sue and be sued on behalf and in representation of the Commonwealth of Puerto Rico for any claims in good faith that may arise in relation to the coffee insurance or reinsurance business authorized by [this Act], the Commonwealth waiving to such end its immunity and recognizing any obligations that may be duly established and adjudicated by the courts, *after having previously exhausted the proper administrative procedure for the settlement of such claim; Provided, That where both parties accept the obligation and there is conflict only as to some difference, action in the courts shall issue only with respect to such difference;* . . . ."

.      .      .      .      .      .      .      .

---

[1] Only plaintiffs, Alfredo Abréu Román, Benigno González Santiago, José Enrique González, Confesor Maldonado Sepúlveda, Luis Maldonado Serrano, Lorenzo Olivera Hernández, Baldomero Ortiz Cruz, Antonio Soto Mejías, Arsenio Matos, and Bernardo Pons appealed in case R-62-196 since they were the only ones who had their plantations insured.

[2] 5 L.P.R.A. §§ 290–317.

"The Coffee Insurance of Puerto Rico shall establish the manner of adjusting and paying claims for coffee losses caused by hurricane." (Italics ours.)

The Rules and Regulations of the Coffee Insurance in force at that time, of the crop as well as of the plantation, provided in § 18 in its relevant part:

"*.    .    .    .    .    .    .    .*

"Before starting to arbitrate the points submitted, the two arbitrators shall appoint in writing a third arbitrator. This third arbitrator shall be present at the arbitration hearings and shall decide on the points of discrepancy in the question submitted to arbitration on which the other two arbitrators are unable to agree. The two arbitrators, or in a case of dispute the third, shall be obligated to decide in what proportion the said parties shall pay the various expenses and charges relating to the arbitration.

"*The prior evaluation of the losses or damages through arbitration is indispensable, and until such arbitration has taken place, the insured may in no court of justice enter any claim appertaining to the policy.*"[3] (Italics ours.)

It appears from the facts of the case that right after the occurrence of the hurricane gales[4] plaintiffs notified the Coffee Insurance that due to the gales their crops and plantations had suffered losses for which they requested that the proper steps be taken to adjust and pay their claims. The Coffee Insurance answered denying that the winds which swept plaintiffs' farms were "hurricane gales" as defined in the Act,[5] for which reason their claims were inappropriate. However, the Insurance sent several inspectors to

---

[3] Clause 15 of the crop insurance policies and clause 13 of the plantation insurance policies have identical language.

[4] The tempestuous nature of the winds which occurred the 13th and 14th of September 1958 was duly established by means of documentary evidence and the testimony given by Mr. Ralph Higgs, Director of the Weather Bureau.

[5] Section 17 (5 L.P.R.A. § 291) defines "hurricane" as "squall, wind storm, or hurricane gales causing losses in coffee plantations. . . ."

inspect plaintiffs' farms which inspection was carried out during the months of September and October, 1958. The reports of the inspectors did not acknowledge compensable losses on plaintiffs' crops or plantations.

On November 1, 1958 Mr. S. L. Legarde Garcés requested the Coffee Insurance on behalf of claimants to admit that the winds which occurred were of the nature contemplated by the Act and, therefore, its liability to claimants and to submit the matter to arbitration. The Coffee Insurance answered in the sense that "the position of this department, as you properly state, is that no atmospheric disturbance of the nature comprised in the definition of "hurricane" contained in the Act occurred and that if it had occurred the losses caused in the coffee crops would not be over 10 percent of the existing crops."

Both parties proceeded to designate their respective arbitrators and third arbitrators who began the inspection of the farms in December of that same year. On June 5, 1959, date on which the complaint was filed, the arbitration awards had not yet been rendered.

The court acted correctly in dismissing the special defense of defendants.

■ The Act provides that action in the courts shall take place "after having previously exhausted the proper administrative procedure" as determined by the Coffee Insurance. The Coffee Insurance, by virtue of the powers vested by law, determined that arbitration would constitute the administrative relief to adjust and pay claims for coffee losses. It is, therefore, an indispensable requisite for a claimant to submit to arbitration in order to determine the losses before resorting to the courts.

■ But the attendant circumstances in the instant case wherein nine months after the loss occurred and six months after the arbitrators had been appointed, there was no de-

termination as to the amount of the losses, it seems to us, warranted the action of the coffee growers in resorting to the court to claim their rights protected by the policy. It was evidently very difficult for the arbitrators to render any award since, as the trial court held, the arbitrator of the Coffee Insurance and a third arbitrator "refused to sign a document proposed by the plaintiffs' arbitrator to establish the rules to govern the arbitration, which agreement or arbitration document, dated March 3, 1959, establishes the rules and regulations prescribed in the policies and regulations of the Coffee Insurance to determine the loss in the crops and plantations."

█ If they could not reach a decision as to the rules to be followed for evaluating the damages, they certainly could not make any determination. It seemed useless to insist on arbitration. We have here a case in which the parties agreed, in a contract, that if there were damages the amount would be determined by arbitration. And the trial court concluded that the arbitrators could not discharge their mission because they were not in agreement as to the rules to follow in doing so. Therefore plaintiffs were evidently justified in resorting to the court without waiting any longer, since each day wasted made it more difficult for determining the losses suffered. In *Pons* v. *Rivera*, 85 P.R.R. 502 (1962), we stated that in the interpretation of a coffee crop insurance contract a strict and legalistic criterion should not prevail, but rather a liberal one which will promote the legislative purposes and intents of the statute which established it. Under the circumstances of the case at bar to support the position of the defendants would require a too literal application of the arbitration provision.

Having examined the evidence considered by the trial court, we find no reason to disturb its decision to the effect that there were no losses in plaintiffs' plantations.

█ No error was committed in ordering defendant to pay attorney's fees since he was obstinate in denying the occurrence of the gales where in a prior case before the same court (*Latimer* v. *Rivera Santos*, C-59-7057), he admitted it.

Judgment appealed from will be affirmed.